UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDER ACEVAL,

　　　　　　　　　Petitioner,　　　　　　　　Case Number 2:12-CV-10897
　　　　　　　　　　　　　　　　　　　　　　Honorable Arthur J. Tarnow

v.

DUNCAN MACLAREN,

　　　　　　　　　Respondent.
_____/

**OPINION AND ORDER GRANTING THE PETITION FOR WRIT OF HABEAS
CORPUS**

　　　Alexander Aceval, ("Petitioner"), filed this petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. The petition challenges his June 7, 2006, Wayne

Circuit Court guilty plea conviction of possession with intent to deliver 1,000 or more

grams of cocaine. MICH. COMP. LAWS § 333.7401(2)(a)(i). Petitioner was sentenced

under the terms of his plea bargain to 10-to-15 years imprisonment. The petition

raises two claims: (1) Petitioner was denied his Sixth Amendment right to counsel

of choice when the trial court did not allow Petitioner to have a second retained

attorney present a pretrial motion and otherwise represent Petitioner during trial

proceedings; and (2) Petitioner's double jeopardy rights were violated when he was

retried after the prosecutor used perjured testimony with the knowledge and consent

of the trial judge at Petitioner's first trial. The Court will grant the petition on both

*Aceval v MacLaren*, 12-10897

grounds because the state courts unreasonably adjudicated the claims in light of clearly established Supreme Court law.


I. Background

Petitioner's case–which would have been a fairly typical narcotics trafficking prosecution–gained notoriety when the police, prosecutor, and trial judge knowingly allowed witnesses to perjure themselves at Petitioner's first trial. Specifically, a confidential informant who stood to gain as much as $100,000 from the prosecution was allowed to lie about his involvement in the case.  Police officers were also allowed to lie about their association with the informant.

As a result of their conduct, the assistant prosecuting attorney trying the case was prosecuted by the Michigan Attorney General and pled guilty to misconduct in office. She was sentenced to six months in jail, and was disbarred. Two police officers pled guilty to neglect of duty and received 90-day jail sentences. The trial judge retired and was reprimanded by the Michigan Judicial Tenure Commission.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This matter arises out of an illegal drug transaction. On March 11, 2005, police officers Robert McArthur, Scott Rechtzigel, and others, acting on information obtained from Chad William Povish, a confidential

2

informant (CI), were on surveillance at J Dubs bar in Riverview, Michigan. Povish previously told police officers that defendant had offered him $5,000 to transport narcotics from Detroit to Chicago. That day, the officers observed defendant, Povish, and Bryan Hill enter the bar. Defendant arrived in his own vehicle, while Povish and Hill arrived in another. Eventually the three individuals left the bar and loaded two black duffel bags into the trunk of Povish's car. Povish and Hill then drove away, while defendant drove away in his own vehicle. Subsequently, the officers stopped both vehicles and found packages of cocaine in the duffel bags located in the trunk of Povish's car. Defendant was subsequently arrested and charged with possession with intent to deliver 1,000 or more grams of cocaine, MCL333.7401(2)(a)(i), and conspiracy to commit that offense, MCL750.157a.

Before trial, defendant moved for the production of the identity of the CI. During an evidentiary hearing on June 17, 2005, defendant requested that the trial court, Judge Mary Waterstone, conduct an in camera interview of McArthur, the officer in charge of the investigation. The judge agreed, and in the conference it was revealed that McArthur and Rechtzigel knew that Povish was the CI. Further,the officer told the trial court that Povish was paid $100 for his services, plus "he was going to get ten percent, whatever we got." The conference was sealed and the trial court denied defendant's motion.

Subsequently, defendant filed a motion to suppress certain evidence. During a hearing on September 6, 2005, Rechtzigel lied when he testified, in response to defense counsel's questioning, that he had never had any contact with Povish before March 11, 2005. The prosecutor did not object. On September 8, 2005, in another sealed in camera conference between the judge and the prosecutor, the prosecutor admitted that she knew that Rechtzigel had knowingly committed perjury but stated that she "let the perjury happen" because "I thought an objection would telegraph who the CI is." In response,the judge stated that she thought "it was appropriate for [the witness] to do that." Further, the court added, "I think the CI is in grave danger. . . . I'm very concerned about his identity being found out."

3

The matter went to trial on September 12, 2005. At trial, the prosecutor and the judge continued their efforts to protect the CI'sidentity. Povish testified that he had never met Rechtzigel or McArthur before they stopped his vehicle on the day that he received the duffel bags and that neither had offered him a deal of any kind. He further testified that did not know what was in the duffel bags and that, until trial, he believed that he could be charged with a crime for his role in the incident. The prosecutor made no objection to this testimony. The prosecutor and the judge again indicated, in another sealed ex parte bench conference on September 19, 2005, that they knew Povish had perjured himself in order to conceal his identity. At the close of the trial, the jury was unable to reach a verdict and, thus, the trial court declared a mistrial.

On December 7, 2005, attorney Warren E. Harris filed an appearance to represent defendant in his retrial, again in Judge Waterstone's court. On March 6, 2006, attorney David L. Moffitt petitioned for leave to file a limited appearance solely for purposes of filing certain motions by defendant, which the trial court granted on March 17, 2006. Subsequently, at a hearing on March 28, 2006, defendant indicated that he had become aware that the CI was Povish and argued that the case should be dismissed because of the trial court's and the prosecutor's complicit misconduct in permitting perjured testimony. Defendant also requested that both the prosecuting attorney and Judge Waterstone disqualify themselves from the case. Judge Waterstone disqualified herself on the record. The following day, Judge Vera Massey–Jones, the successor judge, entered an order unsealing the three in camera interviews.

Twelve days before defendant's second trial, Harris moved to withdraw because of a breakdown in the attorney-client relationship that he attributed to Moffitt's increased involvement. After finding that Moffitt's appearance was only a limited appearance, the trial court, noting that it "can't deal with lawyers who aren't in the case all the way[,]" disallowed Moffitt from participating in the case and did not permit Harris to withdraw. The trial court stated, "And there's no way in the world I'm going to let you have a new trial lawyer come in here and mess up." Further, the trial court indicated that the matter was set for

*Aceval v MacLaren*, 12-10897

trial on a "particular date, and it's going to go to trial that date[,]" and that there was "no way I'm going to let" you "ruin my trial docket."

Defendant's retrial began on June 1, 2006, with Harris acting as counsel. Before trial, defendant allegedly contacted a prosecution witnesses and directed him to provide false testimony in support of the defense. After the prosecution discovered this information, it informed the trial court and defense counsel. Subsequently, the witness testified that defendant had asked him to lie and he purged his testimony. Thereafter, defendant pleaded guilty to the charge of possession with intent to distribute more than 1,000 grams of cocaine.

*People v. Aceval (On Remand)*, 282 Mich. App. 379, 382-385 (2009).

Following sentencing, Petitioner was twice appointed appellate counsel, but both attorneys withdrew before an appeal was filed. Finally, on June 29, 2007, attorney David Moffitt filed a delayed application for leave to appeal in the Michigan Court of Appeals, which raised the following claims:

I. The Double Jeopardy Clauses of the State and Federal Constitutions Precluded the Prosecutor From Retrying Defendant Where an Intentional Prosecutorial and Judicial Criminal Misconduct Conspiracy of a Degree Unprecedented in Michigan Or Federal Judicial History Sought Unfair Conviction of Defendant.

II. Denial of Sixth Amendment Right to Counsel Invalidates Defendant's Plea-based Second Trial Conviction.

III. Ineffective Assistance of Counsel Rendered Defendant's Guilty Plea Illusory, Involuntary and Otherwise Invalid.

IV. The Numerous Due Process Violations, Individually or Collectively, Irreparably Denied Defendant-[A]ppellant His Right to a Fair trial and Any Possibility of Prevailing in Any Subsequent Trial.

5

*Aceval v MacLaren*, 12-10897

V. Fraudulent Criminal Processes Were Insufficient to Afford Jurisdiction over Defendant[-]Appellant.

The Michigan Court of Appeals denied Petitioner's delayed application "for lack of merit in the grounds presented." *People v. Aceval*,  No. 279017 (Mich. Ct. App. October 5, 2007).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court. The Supreme Court remanded the case to the Court of Appeals to consider "whether the defendant was denied the right to counsel of his choice under *United States v. Gonzales-Lopez*, 548 U.S. 140 (2006)," and to consider "whether the prosecution's acquiescence in the presentation of perjured testimony amounts to misconduct that deprived the defendant of due process such that retrial should be barred." *People v. Aceval*, 480 Mich. 1108 (2008).

On remand, the Michigan Court of Appeals affirmed Petitioner's conviction in a published opinion. *People v. Aceval (On Remand)*, 282 Mich. App. 379 (2009). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, but it was initially denied by standard order. *People v. Aceval*, 485 Mich. 884 (2009). The Michigan Supreme Court subsequently granted Petitioner's motion for reconsideration, and scheduled the case for oral argument on whether the court should grant leave to appeal, stating:

> At oral argument the parties shall address whether the prosecution's acquiescence in the presentation of perjured testimony in order to

6

*Aceval v MacLaren*, 12-10897

conceal the identity of a confidential informant amounts to misconduct that deprived the defendant of due process such that retrial should be barred.

*People v. Aceval*, 486 Mich. 953-954 (2010).

After hearing argument, four Justices voted to deny leave. *People v. Aceval*, 488 Mich. 978 (2010). Justice Hathaway stated she would have granted leave. *Id.* Justice Stephen Markman stated he would have reversed the conviction and precluded re-prosecution. *Id.* Justice Maura Corrigan recused herself as she was a potential witness. *Id.*

Petitioner then filed the instant petition for habeas relief.


## II. Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

*Aceval v MacLaren*, 12-10897

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.    , 131 S. Ct. 770, 789, 178 L. Ed. 2d 624 (2011), (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through

8

*Aceval v MacLaren*, 12-10897

appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases — indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this

*Aceval v MacLaren*, 12-10897

presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Discussion

A. Counsel of Choice

Petitioner first claims that he was denied his counsel of choice when the trial court prohibited retained attorney David Moffitt from arguing a pretrial discovery motion and otherwise representing Petitioner because the court would not allow an attorney to appear for Petitioner who would not file a general appearance and was not in the case "all the way." Respondent asserts that the claim is procedurally defaulted, waived by Petitioner's guilty plea, and meritless. The Court finds that Petitioner is entitled to habeas relief on this claim.

After his first trial ended with a hung jury, Petitioner retained a new attorney, Warren Harris, to represent him during his second trial. Information then came to light regarding the confidential informant's false testimony during the first trial. Three weeks before the new trial was set to begin, Judge Waterstone granted attorney David Moffitt's request for a limited appearance to argue pretrial motions related to the confidential informant. Moffitt then filed and argued several pretrial motions, and he unsuccessfully pursued an interlocutory appeal. Moffitt also moved for Judge

10

*Aceval v MacLaren*, 12-10897

Waterstone to disqualify herself, and she did. The case was then reassigned to Judge Massey-Jones.

Moffitt and Harris thereafter filed somewhat conflicting pretrial motions regarding the disclosure of agreements the prosecutor made with the confidential informant. When the attorneys arrived to argue their motions, Harris told the court that he was opposed to Moffitt's version of the motion, but he had received a letter from Petitioner directing him to withdraw his motion and to allow Moffitt to proceed with his version. Harris stated that Petitioner's letter directed him to consult with Moffitt during trial. Harris then moved to withdraw, stating that as a result of the disagreement about how to handle the issues raised by the pretrial motion there had been a breakdown in the attorney-client relationship.  He was unwilling to proceed in the fashion requested by his client, and he suggested that Moffitt ought to take-over as sole counsel for Petitioner.

The trial court made no inquiry into Harris' statement that his relationship with Petitioner had broken down. Instead, after determining that Moffitt had only filed a limited appearance, Judge Massey- Jones said, "I can't deal with lawyers who aren't in the case all the way. So if he's just here for a limited matter he's going to have to go someplace else. I need a lawyer that I can hold and speak to in regards to everything." Tr. 5/19/06, 8. The court told Moffitt to go to the Court of Appeals

11

*Aceval v MacLaren*, 12-10897

because it was "not letting him say another word." Id. Moffitt attempted to object, but

Judge Massey-Jones would not allow him to make a record:

> Moffitt: May I respectfully put on the record, your Honor, that -
>
> The Court: No. Tell that to the Court of Appeals.
>
> Moffitt: - that I object. Thank You.
>
> The Court: Have a nice day.

Id., 9.

From that point through the guilty plea, Harris represented Petitioner in the

trial court.

When the issue was subsequently raised in the Michigan Court of Appeals,

the appellate court denied it as follows:

> We first address whether defendant was denied the right to counsel of his choice under *Gonzalez-Lopez*, supra. Defendant did not preserve this argument by asserting it in the trial court. Because this issue is, at a minimum, unpreserved, n3 our review is limited to plain error affecting defendant's substantial rights. *People v. Carines*, 460 Mich. 750, 763-764 (1999).
>
> FOOTNOTES
>
> n3 By pleading guilty, defendant waived appellate review of this issue. "[A] plea of guilty waives all nonjurisdictional defects in the proceedings." *People v. New*, 427 Mich. 482, 488 (1986) (quotation marks and citation omitted). Nevertheless, we will address this issue pursuant to our Supreme Court's order.
>
> Both the United States and Michigan constitutions provide that the accused shall have the right to counsel for his defense. US Const,

12

*Aceval v MacLaren*, 12-10897

Am VI; 1963 Const, art 1, § 20. A defendant's right under the Michigan Constitution is the same as that guaranteed by the Sixth Amendment. *People v. Reichenbach*, 459 Mich. 109, 118 (1998). This guaranteed right encompasses a defendant's right to effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the right to self-representation, *Faretta v. California*, 422 U.S. 806, 818 (1975), the right of indigent defendants to have appointed counsel in felony prosecutions, *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963), and the right to choice of counsel, *Powell v. Alabama*, 287 U.S. 45, 53 (1932), which is at issue in this case.

The United States Supreme Court recently expounded upon a defendant's right to choice of counsel in *Gonzalez-Lopez*, supra. The Court stated, "[The Sixth Amendment] commands . . . that the accused be defended by the counsel he believes to be best." *Gonzalez-Lopez*, supra at 146. The Court continued, "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants . . . ." *Id.* at 148 (emphasis added). It is not necessary that a defendant show prejudice; it is enough that a defendant merely show that a deprivation occurred. *Id.* at 150. However, this right to choice of counsel is limited and may not extend to a defendant under certain circumstances. *Id.* at 151; *Wheat v. United States*, 486 U.S. 153, 164 (1988). As the *Gonzalez-Lopez* Court stated:

> [T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them. See *Wheat*, 486 U.S. at 159; *Caplin & Drysdale [v United States]*, 491 U.S. [617], at 624, 626 [1989]. Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation. See *Wheat*, 486 U.S., at 159-160. We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.* at 163-164, and against the demands of its calendar, *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). [*Gonzalez-Lopez*, supra at 151-152.]

Similarly, this Court has opined that "[a] balancing of the accused's right to counsel of his choice and the public's interest in the

*Aceval v MacLaren*, 12-10897

prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated." *People v. Krysztopaniec*, 170 Mich. App. 588, 598 (1988).

In the present matter, defendant was represented by not one, but two, attorneys of his choice. Before the case was transferred to Judge Massey-Jones, Judge Waterstone permitted Moffitt to file a limited appearance and participate in the case solely with respect to certain pretrial motions, while Harris, who was already part of the case, handled matters pertaining to defendant's retrial. Just 12 days before trial, Harris moved to withdraw because of a disagreement between the two counsel regarding proper trial strategy and a resulting breakdown in the attorney-client relationship between Harris and defendant. At the hearing on Harris's motion, Judge Massey-Jones disallowed Moffitt's limited appearance and denied Harris's motion to withdraw. Defendant did not object to proceeding to trial with Harris.

Given these facts, it is our view that defendant was not denied his right to choice of counsel. While Judge Massey-Jones denied defendant a second "limited-attorney" of defendant's choosing, defendant was not denied counsel of his choice, Harris, who was fully involved in the litigation. Moreover, the trial court did not indicate that defendant could not have a co-counsel. Rather, the trial court's statement that it would not "deal with lawyers who aren't in the case all the way" would have permitted Moffitt to file a full appearance and to act as co-counsel had defendant wished Moffitt to do so. Moffitt, however, did not file an appearance and was unwilling or unable to undertake the complete defense of defendant's case. Significantly, defendant did not object to the continued representation by Harris. In short, defendant exercised his right to counsel of choice by proceeding to trial with Harris, who was willing and able to do so.

In addition, our review of the record indicates that Judge Massey-Jones's decision to deny Harris's motion to withdraw 12 days before trial was based primarily on retrying defendant in a timely manner. At one point, Judge Massey-Jones stated, "[T]here's no way in the world I'm going to let you have a new trial lawyer come in here and mess up[,]" and, further, indicated that substituting a new attorney would "ruin [the court's] trial docket." Here, the demands of the trial

*Aceval v MacLaren*, 12-10897

> court's calendar clearly outweighed defendant's right to choice of counsel when defendant maintained the first and primary attorney of his choosing, despite the fact that limited counsel was ejected from the case just 12 days before trial. *Morris*, supra at 11-12; *Krysztopaniec*, supra at 598. Under these circumstances, we cannot conclude that defendant was denied his Sixth Amendment right to counsel when the trial court did not permit Moffitt's limited appearance. Defendant has failed to show plain error affecting his substantial rights. *Carines*, supra at 763-764.

*Aceval*, 282 Mich. App. at 385-388.

First, Respondent's procedural default argument is not well taken. It is true that when a state court ignores a constitutional claim because it resolved the matter based on Petitioner's failure to comply with a state procedural rule, review of the claim can be barred from habeas review. *Wainwright v. Sykes*, 433 U.S.72, 80, 84-87 (1977). And it is true that the Michigan Court of Appeals found that Petitioner did not comply with its contemporaneous objection rule when it found that "defendant did not preserve this argument by asserting it in the trial court."

But a habeas court will not enforce a state's procedural bar where it is obvious that the state court's reliance on the procedural rule is in error. *Hodge v. Haeberlin,* 579 F.3d 627, 643 (6th Cir. 2009); *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007); *Mapes v. Coyle,* 171 F.3d 408, 429 (6th Cir. 1999). Petitioner's counsel did, in fact, contemporaneously object to the trial court's ruling that he was prohibited from arguing the pretrial motion. But the trial court stated it would "not let [him] say another word," and to "tell that to the Court of Appeals." When counsel asked to

*Aceval v MacLaren*, 12-10897

make a record, the trial court told him "no." Respondent can hardly argue in light of this record that Petitioner did not comply with state procedural law. Moffitt attempted to present a full objection, but the trial court prevented him from putting it on the record. Respondent asserts that Petitioner could have filed a motion for reconsideration or an interlocutory appeal, but failure to do those things is not what the court of appeals relied upon to find the claim defaulted. Nor has Respondent established that a rule requiring a motion for reconsideration be filed to preserve a trial error exists under state law.

Alternatively, even if the claim were defaulted, Petitioner has shown cause to excuse his failure to make a full objection."[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The trial court's refusal to allow Petitioner's counsel to make a record as to his objection constitutes an "objective factor external to the defense" that prevented him from complying with the contemporaneous objection rule.

Next, regarding the waiver argument, it is true that an unconditional guilty plea typically waives non-jurisdictional defects in the proceedings below. See *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The Supreme Court held, however, that the erroneous deprivation of the right to counsel of choice in violation of the Sixth

16

*Aceval v MacLaren*, 12-10897

Amendment is a "structural error" in a criminal proceeding and is not subject to harmless error analysis. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150-52 (2006). The Court stated that:

> [d]ifferent attorneys will pursue different strategies. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the framework within which the trial proceeds, or indeed on whether it proceeds at all. . . . Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all.

*Id*. at 150.

Relying on *Gonzalez-Lopez*, the Fifth and Seventh Circuits have held that a defendant's guilty plea does not preclude him from challenging on appeal a denial of his right to counsel of choice. *United States v. Smith*, 618 F.3d 657, 663 (7th Cir. 2010); *United States v. Sanchez-Guerrero*, 546 F.3d 328, 332 (5th Cir. 2008). As the Fifth Circuit stated, "it is obvious that the choice of counsel may seriously impact a defendant's decision to plead guilty." *Id*. "If a defendant is erroneously denied the counsel of his choice, it is a structural error in the trial that brings into question the voluntary and intelligent character of the guilty plea itself." *Id*.

Here, there is no way to determine how the case would have proceeded if the trial court had allowed Moffitt to appear for Petitioner. That is why the denial of counsel of choice is considered a structural error - it directly affects "the framework

17

*Aceval v MacLaren*, 12-10897

within which the trial proceeds, or indeed on whether it proceeds at all." *Gonzalez-Lopez*, 548 U.S. at 150. It is unknowable whether Moffitt's participation would have resulted in Petitioner standing trial and not pleading guilty.

Respondent asserts that Petitioner had the counsel of his choice–Harris–at the guilty plea hearing, and that Petitioner only wanted Moffitt to represent him at the pre-trial motion hearing. But that ignores the fact, as represented by Harris at the hearing, that Petitioner wanted Harris to consult with Moffitt during trial. Petitioner sought to be represented by two retained attorneys throughout trial proceedings, not just Harris. The denial of counsel of choice did not end after the pre-trial motion hearing, it persisted all the way through the guilty plea.

Under these circumstances, therefore, Petitioner's guilty plea does not amount to a waiver of his Sixth Amendment choice-of-counsel claim.

Turning to the merits of the claim, the Michigan Court of Appeals' conclusion that Petitioner had the counsel of his choice at the guilty plea simply does address Petitioner's argument that he desired to have Moffit handle the pre-trial motion and have him consult with Harris during trial proceedings.

In *Gonzalez–Lopez*, the Supreme Court held that the Sixth Amendment provides a criminal defendant the right to "the counsel he believes to be best." 548 U.S. at 146. The Court rejected the contention that, to show a constitutional violation from a denial of substitution of counsel, a criminal defendant must demonstrate that

*Aceval v MacLaren*, 12-10897

the original counsel "was ineffective within the meaning of *Strickland v. Washington*." *Id.* at 144–48. Rather, because "[d]eprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants," "[w]here the right to be assisted by counsel of one's choice is wrongly denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." *Id.* at 148. Indeed, "deprivation of the right to counsel of choice . . . unquestionably qualifies as structural error." *Id.* at 150 (citation omitted). The right to choose counsel is not without limit, however. A trial court maintains "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Id.* at 152 (citations omitted).

As indicated by Harris at the motion hearing, Petitioner desired to have Moffitt represent him at the pretrial motion hearing and have him consult with Harris throughout all other trial proceedings. Petitioner did not want Harris to argue the motion, and indeed, Harris ended up not presenting a motion at all but working out a deal with the prosecution regarding discovery. Thus, at a minimum, Petitioner was denied the attorney of his choosing at the pretrial hearing.

The only ground for disallowing the representation by Moffitt at the hearing by the trial court was the fact that Moffitt would not file a general appearance and handle the case "all the way." Nothing in clearly established Supreme Court law, however, limits the right to counsel of one's choice to a single attorney willing to

19

*Aceval v MacLaren*, 12-10897

handle the whole case. The Supreme Court stated a general rule in *Gonzalez–Lopez* that a criminal defendant who can afford it has the right to "the counsel he believes to be best." 548 U.S. at 146. It did not limit the rule to a single lawyer handling an entire case or to multiple lawyers, so long as they are each willing to handle the entire case.

Now, had the trial court allowed Moffitt to argue the pretrial motion, it is true that the court would also have been forced to address Harris' motion to withdraw because he expressed his unwillingness to consult with Moffitt during further trial proceedings, which in turn would have raised the specter of an adjournment of the trial date. That course might have given rise to a possible reasonable basis for precluding Moffitt's participation under *Gonzalez–Lopez* because it might have affected the demands of the court's trial calendar. But that is not what happened. Instead, the trial court refused to allow counsel of his choosing argue a pretrial motion because that attorney was not in the case "all the way." Such a rationale does not fit within the trial court's "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Id.* at 152.

Petitioner wanted to retain Moffit to handle pretrial matters and to consult with Harris. Harris was uneasy about the arrangement and moved to withdraw. The situation required the trial court to probe into the dispute and resolve it in a manner

20

*Aceval v MacLaren*, 12-10897

that protected Petitioner's right to counsel of choice.  As the Michigan Supreme

Court itself once stated:

> The right to assistance of counsel is a precious constitutional
> right. It is probably the most important right of any defendant in a
> criminal trial. Without needlessly prolonging this opinion by citation of
> authority, we might point out that the importance of this right in our legal
> system is thoroughly analyzed by the United States Supreme Court in
> *Powell v. Alabama*, 287 U.S. 45 (1932), and *Gideon v. Wainwright*, 372
> U.S. 335 (1963). It is guaranteed by the United States Constitution and
> has been included in every Constitution of this state since Michigan
> entered the Union. This right has been jealously protected by the courts
> and is of critical importance to any defendant in a criminal trial. Hence,
> whenever this right is asserted, the trial court must take special care to
> insure that it is protected.

*People v. Williams*, 386 Mich. 565, 575-576 (1972).

Instead, of taking special care to protect Petitioner's right to counsel, the trial

court intemperately gave short-shrift to the problem by finding that she would not

allow an attorney to represent Petitioner if he would not file a general appearance

and be wiling to try the whole case. This basis for rejecting Petitioner's request to

have Moffit represent resulted in an unreasonable application of clearly established

Supreme Court law.

The alternative analysis of the Michigan Court of Appeals also misses the

mark. It found that Petitioner was not denied the right to counsel of choice because

his retained counsel, Harris, represented him during the guilty plea. This reasoning

does not address at all Petitioner's claim that he was denied his right to counsel of

*Aceval v MacLaren*, 12-10897

choice at the motion hearing itself. Instead, the court implicitly relied on a dubious principle that Petitioner was only entitled to an attorney willing to handle the entire case, or that he had no right to counsel of his choice at a pretrial hearing. No such distinction has ever been made by the Supreme Court, and Respondent does not offer any reason why such a distinction would be reasonable.

The appellate court went on to find that the trial court expressed concern regarding the trial calender, but that was not the trial court's basis for denying Petitioner's request to have Moffitt represent him at the motion hearing. It did so because he would not file a general appearance. In fact, Petitioner never requested an adjournment of the trial date. While allowing Moffitt to present the pretrial motion would have prompted Harris to press his motion to withdraw, the trial court might have denied the motion to withdraw, found some compromiser, or otherwise assuaged Harris's concerns and preserved Petitioner's right to counsel of choice and its trial calender. But the trial court was in a hurry to dismiss Moffit out of hand and in doing so ignored Petitioner's right to counsel of choice.

In short, Petitioner had a right to have the retained attorney of his choosing argue the pretrial motion. And while that right was not absolute, neither the trial court nor the Michigan Court of Appeals gave a reasonable explanation consistent with clearly established Supreme Court law as to why it was appropriate to deny Petitioner's request to have counsel of his choice represent him at that proceeding.

22

*Aceval v MacLaren*, 12-10897

Although it would seem that the failure to allow Moffitt to argue the motion had no appreciable effect on the outcome of the proceedings, Petitioner need not demonstrate prejudice to demonstrate entitlement to relief. As stated, the denial of the right to counsel of choice is a structural error. *Gonzalez–Lopez*, 548 U.S. at 148. Moreover, Petitioner desired to have Moffit work with Harris during further trial court proceedings. This too is a structural error.  In addition, Petitioner very well may have been prejudiced by the Court's refusal to allow Moffit to participate in further trial court proceedings. It may very well have impacted his decision to plead guilty or stand trial.

Accordingly, The state court adjudication of Petitioner's claim resulted in an unreasonable application of *Gonzalez–Lopez.* Petitioner is therefore entitled to habeas relief based on this claim.

## B. Double Jeopardy

Petitioner's second claim asserts that the police, prosecutor, and trial judge's conduct at his first trial was so egregious that a retrial should have been barred. Respondent does not contest the fact that serious misconduct occurred at the first trial. Indeed, the Michigan Attorney General pursued criminal charges against the prosecutor, two detectives, and the trial judge. Respondent asserts, however, that

23

*Aceval v MacLaren*, 12-10897

Petitioner is not entitled to habeas on this claim because under clearly established

Supreme Court law Petitioner was not entitled to have his retrial barred.

Michigan Supreme Court Justice Markman dissented from the court's order

denying leave to appeal, and stated that he would have granted relief and barred

reprosecution:

> I am of the view that the jury -- which could not reach a verdict of guilty even absent an awareness of the tainted evidence -- would almost certainly have found it to be of significance as to the credibility of the principal witness against defendant that the witness had been promised, upon defendant's conviction, 10% of the expected forfeiture proceeds, an amount estimated to be as much as $ 100,000. Had the jury been made aware of this evidence, as it should have been, there is a reasonable chance that defendant would have been acquitted, which acquittal under the United States and Michigan Constitutions would have barred a second trial.

> I am further of the view that had it become known during trial that: (a) the principal witness testified falsely concerning this interest; (b) that such testimony was known to be false by both the prosecutor and the judge; and (c) that the prosecutor and the judge colluded in allowing such false testimony, a mistrial almost certainly would have been required on account of such misconduct. And such a mistrial -- one occasioned by circumstances directly "attributable to prosecutorial [and] judicial overreaching" -- would almost certainly have deprived the prosecutor, under either the due process or the double jeopardy clauses of the United States and Michigan Constitutions, of a second opportunity to try the defendant. *United States v. Dinitz*, 424 U.S. 600, 607 (1976). That such circumstances did not come to light until after the trial, and that the state therefore was able to try defendant a second time "cannot make an unconstitutional second trial retrospectively valid." *People v. Lett*, 466 Mich 206, 229 (2002) (CAVANAGH , J., dissenting.)

*People v. Aceval*, 488 Mich. 978, 978-979 (2010) (J. Markman dissenting).

24

*Aceval v MacLaren*, 12-10897

This rationale is compelling, and is the only reasonable result given the dictates of clearly established Supreme Court law.

The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 605 (1976). "As part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed before the first jury impaneled to try him.'" *Oregon v. Kennedy*, 456 U.S. 667, 671-73 (1982) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).  The Double Jeopardy Clause also protects a defendant from "the anxiety, expense, and delay occasioned by multiple prosecutions." *Lee v. United States*, 432 U.S. 23, 32 (1977). Jeopardy attaches when the original jury panel is seated and sworn. *Crist v. Bretz*, 437 U.S. 28, 38 (1978). Ordinarily, once jeopardy attaches, a defendant  may not be retried after a mistrial has been declared unless (1) there is a "manifest necessity" for a mistrial, or (2) the defendant either requests or consents to a mistrial. *Dinitz*, 424 U.S. at 606-07.

Here, there was a mistrial declared after Petitioner's first trial because the jury could not reach a verdict. Petitioner consented to the declaration of a mistrial on these narrow grounds. It is important to note that when Petitioner consented to the mistrial, he did not know of the collusion between the trial judge and prosecutor

25

*Aceval v MacLaren*, 12-10897

regarding the confidential informant, and he did not request or consent to a mistrial because of that collusion.

The Double Jeopardy clause bars retrial when "bad faith conduct by judge or prosecutor threatens harassment of an accused . . . so as to afford the prosecution a more favorable opportunity to convict the defendant." *Dinitz*, 424 U.S. at 611. For such conduct to bar retrial, a prosecutor or judge must specifically act in "bad faith" or must intend to goad the defendant "into requesting a mistrial or to prejudice the defendant's prospects for an acquittal." *Id.* at 611–12; see also, *United States v. Jorn*, 400 U.S. 470, 485 (1971). "[T]he strictest security is appropriate when . . . there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Arizona v. Washington*, 434 U.S. 497, 508 (1978). Retrying a defendant after such bad faith conduct implicates a defendant's "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter*, 336 U.S. 684, 689 (1949).

There can be no reasonable debate in this case but that the prosecutor and trial judge acted in bad faith by hiding from Petitioner the fact that the key prosecution witness was in fact a confidential informant who according to Justice Markman stood to profit by up to $100,000 from the prosecution. Indeed, Respondent can hardly contest this fact because the Michigan Attorney General prosecuted the prosecutor and trial judge for their conduct in Petitioner's case.

*Aceval v MacLaren*, 12-10897

There are no set of circumstances in which Petitioner's first trial could have been left to stand. It was a sham. The conduct of such a sham trial implicated a number of Petitioner's double jeopardy interests. Intentional misconduct such as this firstly is more likely to be highly prejudicial and so to cause an inaccurate jury verdict. The prosecutor also illegitimately increased the likely expense, embarrassment, and ordeal Petitioner was forced to suffer as a direct product of intentional misconduct. Barring retrial under such circumstances deters prosecutors and trial judge's from Petitioner's double jeopardy right to a particular tribunal. See generally *Jorn*, 400 U.S. at 479-86; *Dinitz*, 424 U.S. at 606-12.

It is equally obvious that the bad faith conduct prejudiced Petitioner's prospects for an acquittal. The jury was unable to reach a verdict. Had they known the enormous financial incentive that Povish–a drug dealer who was no paragon of virtue to begin with–had to testify against Petitioner, it is very likely Petitioner would have been acquitted. Retrial is barred where the judge or prosecutor knowingly engages in misconduct with the intention of prejudicing the defendant's chances for acquittal and there is, in fact, serious prejudice. See *United States v. Zozlio*, 617 F.2d 314, 315 (1st Cir. 1980); *United States v. Opager*, 616 F.2d 231, 233-34 (5th Cir. 1980); *Drayton v. Hayes*, 589 F.2d 117, 121 (2nd Cir. 1979); *United States v. Martin*, 561 F.2d 135, 138-40 (8th Cir. 1977).

27

*Aceval v MacLaren*, 12-10897

Respondent asserts that in *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982), the Supreme Court held that where a mistrial is declared at the defendant's own request, double jeopardy does not bar retrial, except in the "narrow" circumstance in which the prosecutor's actions giving rise to the motion for mistrial were done in order to "goad" the defendant into requesting a mistrial. *Id.* at 673. Here, the prosecutor did not intend to goad Petitioner into moving for a mistrial. The mistrial was caused by the jury's inability to reach a verdict. Petitioner did not learn of the collusion between the trial judge and prosecutor until after that time. *Kennedy* does not apply to this case because Petitioner never moved for a mistrial based on the prosecutor's misconduct. *See United States v. Wallach*, 979 F.2d 912, 915 (2d Cir. 1992) ("We have some doubt that the Supreme Court expected its carefully worded statement of the rule in *Kennedy* to be extended beyond the context of a trial that ends with the granting of a defendant's motion for a mistrial."). In the absence of a motion for a mistrial by the defendant, such as the case here, the general rule announced in *Dinitz* applies.

The bottom line here is that the prosecutor and trial judge conducted a sham trial that tilted the scales of justice strongly in favor of the prosecution, and even with that advantage the jury–the "particular tribunal" chosen by Petitioner to decide his case–was unable to convict. Under *Dinitz*, such extraordinary bad faith prohibited Petitioner's retrial before a different tribunal. The first sham trial served no purpose

28

*Aceval v MacLaren*, 12-10897

other than to deplete Petitioner's resources and deprive him of his right to be tried before a particular tribunal in a single proceeding. The contrary decision by the state courts constituted an unreasonably application of clearly established Supreme Court law.

### IV. Conclusion

Based on the foregoing analysis, the Court concludes that Petitioner's claims were unreasonably decided by the state courts in light of clearly established Supreme Court law.  Accordingly, the Court **GRANTS** the petition for writ of habeas corpus.

Because Petitioner's rights to be placed twice in jeopardy were violated, the grant of habeas relief is unconditional. Petitioner must be released from custody pursuant to the judgment of sentence challenged by this petition forthwith.

**SO ORDERED.**

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: September 30, 2013

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on September 30, 2013, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

29